UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TOTAL SALES SOLUTIONS, L.L.C. AND
BOB DALE, INDIVIDUALLY                                                        PLAINTIFFS

VS.                                          CIVIL ACTION NO. 3:06-CV-631-DPJ-JCS

CITIGROUP, INC., SUCCESSOR IN
INTEREST TO EUROPEAN AMERICAN
BANK, FORT WORTH AUTO AUCTION
SERVICES, L.P. d/b/a FORT WORTH
VEHICLE AUCTION, SYSTEMS AND
SERVICES TECHNOLOGY, INC.,
MANHEIM SERVICES CORPORATION,
MARIE BAILEY, INDIVIDUALLY, PATTY
BAILEY, INDIVIDUALLY AND LOIS
CHESSOR INDIVIDUALLY                                                         DEFENDANTS

ORDER

This cause is before the Court on the motion of Plaintiffs, Total Sales Solutions, LLC

("Total Sales") and Bob Dale, to remand this action to the Circuit Court of Rankin County,

Mississippi.  Defendants, New Texas Auto Auction Services, L.P. d/b/a Fort Worth Vehicle

Auction, Manheim Services Corporation ("MSC"), Patty Bailey and Marie Bailey oppose the

motion.  The Court, having considered the parties' submissions and the relevant authorities,

concludes that diversity jurisdiction exists under 28  U.S.C. § 1332.

I.       Facts and Procedural History

To fully understand the issues before the Court, it is first necessary to understand the

Defendants' corporate structure–at least as they allege it to be.  According to unrebutted record

evidence, MSC owns and operates eighteen auto auctions in fifteen states including Mississippi.

MSC's lone auction in Mississippi is located in Hattiesburg and is operated by MSC doing

business under the name of Mississippi Auto Auction ("MAA").  In addition, MSC is the parent

corporation and sole shareholder of Mississippi Auto Auction, Inc. ("MAA, Inc."), a corporation MSC established as a name-saver entity.  According to MSC, MAA, Inc. conducts no business anywhere and has no role whatsoever in the ownership or operation of the Hattiesburg auction. In other words, MAA, Inc., is a separate legal entity from MSC, while the d/b/a MAA and MSC are one and the same.[1]

In May 2005, Plaintiff Total Sales purchased a used motor home from Defendants' auction in Fort Worth, Texas and returned with it to Mississippi.  Thereafter, numerous conflicts arose between the parties beginning when Plaintiff sold the motor home to a third-party and Defendants were allegedly unable to provide a clear title.  According to the Complaint, the bad blood created by the initial title dispute affected at least five other motor home transactions between the parties.  Plaintiffs claim that Defendants' retaliatory conduct by and through the Hattiesburg operation, damaged Plaintiffs' reputations and pushed Total Sales "to the verge of financial collapse."

Plaintiffs filed suit on December 22, 2005 seeking an unspecified amount in compensatory damages, treble damages, costs and attorney fees, punitive damages and "[a]ny and all other relief to which Plaintiffs are entitled under the law."  The original Complaint named MAA, Inc. as a non-diverse defendant.  However, Defendants apparently convinced Plaintiffs that MAA, Inc. was not a proper party and Plaintiffs agreed to an order dismissing MAA, Inc.

---

[1]As discussed below, Plaintiff takes issue with certain actions by the employees of the Hattiesburg auction, and the question therefore arises whether the proper party was MAA, Inc. (a Mississippi corporation) or MSC d/b/a MAA.

and substituting MSC as a defendant.[2]  Following the dismissal of the lone diverse defendant

MAA, Inc., Defendants filed a timely notice of removal based on diversity jurisdiction,[3] and

Plaintiffs moved to remand.

II.       Analysis

Defendants may remove any action over which a federal court has original jurisdiction.

28 U.S.C. §1441(a).  The removing party bears the burden of establishing federal jurisdiction,

*Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326,1335 (5th Cir. 1995), and "must prove that federal

jurisdiction existed at the time of removal, or, at the very least, have alleged facts . . . that

establish federal subject-matter jurisdiction."  *Howery v. Allstate Ins. Co.* 243 F.3d 912 (5th Cir.

2001).  In this case, Defendants assert jurisdiction based on diversity of citizenship alleging that

the parties are citizens of different states and that the amount in controversy exceeds $75,000.  28

U.S.C. § 1332.  Plaintiffs contest both issues.

A.        Diversity of Citizenship

There is no dispute that both Plaintiffs are Mississippi residents.  The Notice of Removal

also alleges the following jurisdictional facts:

---

[2]Plaintiffs complain that Defendants somehow tricked them into dismissing MAA, Inc. and argue that Defendants have taken inconsistent positions with respect to MAA, Inc.'s involvement (or lack thereof) in the Hattiesburg operation.  Although Plaintiffs' decision to voluntarily dismiss MAA, Inc. is not before the Court, review of the record reveals that Defendants' position has been consistent.  Before it was voluntarily dismissed, MAA, Inc. moved to dismiss the state court complaint stating that "'Mississippi Auto Auction' is doing business for an affiliated company of MAA, Inc." (i.e., MSC).  In other words, MAA, not MAA, Inc., operated the Hattiesburg auction. MAA, Inc.'s original motion also stated that it is a name-holding entity that "did not conduct any activities which might be alleged in the Complaint."  MAA, Inc. took this same position in a subsequently filed motion for summary judgment, and MSC has maintained that position in response to Plaintiffs' motion to remand.

[3]For some reason, Defendants did not plead federal question jurisdiction under 28 U.S.C. § 1331 although Plaintiffs' Complaint alleges violations of two federal statutes.

| <u>Defendant</u> | <u>Citizenship</u> |
|---|---|
| MSC d/b/a MAA | Georgia and Delaware |
| New Texas Auto Auction Services | Georgia and Delaware |
| Systems & Services Technology, Inc. | Missouri and Delaware |
| Marie Bailey | Texas |
| Patty Bailey | Texas |

If Defendants' jurisdictional averments are correct, complete diversity exists.  Plaintiffs contend, however, that 1) MSC is a Mississippi citizen because its principal place of business is located in Hattiesburg, Mississippi; 2) MAA, Inc. is MSC's alter ego and MAA Inc.'s citizenship should be imputed to MSC; and 3) that the amount in controversy does not exceed the jurisdictional amount.

     1.    <u>MSC's Principal Place of Business</u>

Plaintiffs assert that MSC is a Mississippi citizen because "it must operate the Mississippi Auto Auction in Hattiesburg as a principal place of business."  Under 28 U.S.C. § 1332(a), a corporation is deemed to be a citizen of both the state of its incorporation and the state of its principal place of business.  Because MSC is incorporated outside the State of Mississippi, the focus for this motion is whether MSC's principal place of business is Mississippi.

A corporation's principal place of business is determined by the "total activity test."  *J. A. Olson Co. v. City of Winona,* 818 F.2d 401, 404 (5th Cir. 1987).  The test requires review of two "focal points," the location of the corporation's "nerve center" and its "place of activity."  *Teal Energy USA, Inc. v. GT, Inc.,* 369 F.3d 873, 876 (5th Cir. 2004) (citations omitted).  The factors to be considered in regard to the corporation's operations include the number of locations where the corporation carries on its activities and the importance of the particular activity to the

corporate purpose and to the corporation as a whole.  "Significant indicators of an activity's importance include the proportionate share of corporate assets, both of money and time, devoted to the activity and the proportion of its income that the corporation derives from that activity."  *Id*.

In this case, Plaintiff argues in conclusory fashion that MSC's principal place of business is Mississippi where the company owns and operates one auto auction.  Had Plaintiffs offered any record evidence to support this allegation, the Court would have weighed the evidence in the light most favorable to the Plaintiffs.  However, Plaintiffs offered no competent evidence to meet the supporting affidavit Defendants submitted from an MSC officer.  That affidavit establishes that MSC's Hattiesburg auction is but one of many auctions owned and operated by MSC in fifteen states.  In 2005, the Hattiesburg operation accounted for less than five percent (5%) of MSC's revenues and under two percent (2%) of the company's total assets.  Several of MSC's operations in other states eclipsed Mississippi in terms of assets and revenues, and one state (with three MSC auctions) had a total book value roughly seven times greater than MSC's Mississippi auction.

Although the relative insignificance of MSC's Mississippi operation is relevant, when a court considers a corporation whose "operations are far flung," as in this case,

> the sole nerve center of that corporation is more significant in determining principal place of business . . ., when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant . . ., but when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance . . . .

*J. A. Olson Co.,* 818 F.2d at 411 (cited in *Teal Energy USA, Inc.,* 369 F.3d at 876). Again, there is no conflict in the record evidence. The Hattiesburg auction does not carry on managerial or decision-making activities that affect other corporate locations as contemplated by the nerve center test. Corporate policy and decision making for Hattiesburg and the auctions in other states is handled from MSC's corporate headquarters in Atlanta, Georgia. The Court concludes MSC's principal place of business lies outside the State of Mississippi.

      2.   <u>Alter-Ego</u>

When a parent corporation is found to be an alter ego of its subsidiary, the citizenship of the subsidiary is imputed to the parent. *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 557 (5th Cir. 1985). Plaintiffs argue such is the case with MSC and MAA, Inc.

According to the Plaintiffs, "a significant portion of the tortious conduct complained of by Plaintiffs occurred by and through the acts of employees or agents of the Manheim Defendants out of the Mississippi Auto Auction in Hattiesburg." Plaintiffs reason that because the auction is MSC's alter-ego, its citizenship is imputed to MSC. The deficiency in this argument is that Plaintiffs have failed to differentiate the d/b/a MAA from MAA, Inc. According to Defendants' unrebutted evidence, MAA, Inc. had nothing whatsoever to do with the Hattiesburg auction where MSC operated under the d/b/a MAA. The two names are admittedly similar, but Plaintiff cannot merely allege that MAA and MAA, Inc. are one and the same, they must submit some evidence to rebut Defendants' proof that they are separate. Because MAA, Inc. played no role in the Hattiesburg auction (and therefore no role in the events about which Plaintiff complains), MAA, Inc.'s citizenship would not be imputed to MSC for the purposes of destroying diversity jurisdiction even if MAA, Inc. were MSC's alter-ego.

In addition, there is nothing in the record to suggest that MSC and MAA, Inc. were alter-egos. Mississippi case law generally favors maintaining corporate entities and avoiding attempts to pierce the corporate veil. *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989). The Mississippi Supreme Court has enunciated three factors necessary to find that the parent corporation is the alter-ego of the subsidiary: "(a) some frustration of contractual expectations regarding the party . . . looked [to] for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." Id.; *see also Hardy v. Brock*, 826 So. 2d 71, 75 (Miss. 2002); *Castillo v. M.E.K. Constr. Inc.*, 741 So. 2d 332, 340 (Miss. 1999); *Richardson v. Jenkins Builders, Inc.*, 737 So. 2d 1030, 1031 (Miss. Ct. App. 1999) (applying the *Gray* three-part test for piercing the corporate veil). Additionally, "a party must present some credible evidence of each of these points." *Gray*, 541 So. 2d at 1047.

Plaintiffs' only proof on this issue establishes that MAA, Inc. is a wholly owned subsidiary of MSC. This does not, however, equate to alter ego status: "[O]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985). Based on the record, the Court concludes that piercing the corporate veil is not warranted here.

3.     The Amount in Controversy

Plaintiffs allege that the required amount in controversy is not met. The removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *See Allen*, 63 F.3d at 1335. When a complaint is silent as to the

7

amount of damages a plaintiff seeks, the removing defendant may prove that the jurisdictional amount is satisfied in one of two ways: (1) by demonstrating that it is facially apparent from the complaint that the claim likely exceeds $75,000, or (2) by setting forth facts that support a finding that the amount in controversy is adequate. *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773-74 (5th Cir. 2003); *Grant v. Chevron Phillips Chem. Co. L.P.*, 309 F.3d 864, 868 (5th Cir. 2002).

In this case, it is "facially apparent" that Plaintiffs have asserted claims that likely exceed $75,000. Plaintiffs' Complaint alleges that an initial fraudulent act with respect to the odometer on a motor home led to a series of other fraudulent acts by Defendants (including forgery). The Complaint states claims for violation of the Federal Odometer Disclosure Act, violation of the Fair Trade and Deceptive Practices Act, fraud/fraudulent inducement, tortious interference with business relations/prospective business advantage, civil conspiracy, unjust enrichment, constructive trust, intentional infliction of emotional distress, negligence/gross negligence and breach of warranty.

As for the damages related to these claims, the Complaint seeks compensatory, treble and punitive damages. More specifically, Plaintiffs allege that the initial odometer dispute prevented Total Sales from transferring good title to their purchaser. Plaintiffs further allege that Defendants then retaliated against them, interfered with the sale of five motor homes, and caused Plaintiffs to lose the sale of another. Defendants' actions also allegedly damaged Plaintiffs' reputations, threatened the status of Plaintiffs' licensure with the State of Mississippi, caused emotional distress, and ultimately "pushed" Plaintiffs to the "verge of financial collapse . . . ." If

Plaintiffs prevail on such claims, it is facially apparent that the damages (including treble and punitive damages) would likely exceed the jurisdictional amount.

Moreover, the number of claims, the convoluted facts, the location of the witnesses (many of whom reside in another states), and the scope of the litigation thus far, all suggest that the attorneys fees in this case (and those in other matters Plaintiff claims were caused by Defendants) will be substantial.[4]

Applying the test advanced in *Allen*, and given the nature of Plaintiffs' claims and Plaintiffs' demand for treble damages, punitive damages, and attorney's fees, Defendants have demonstrated by a preponderance of the evidence that it is facially apparent from Plaintiffs' Complaint that the amount in controversy exceeds $75,000.

The Court concludes that subject matter jurisdiction exists under 28 U.S.C. § 1332. Plaintiffs' motion is therefore denied.

**SO ORDERED AND ADJUDGED** this the 13th day of June, 2007.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[4]Though not stated in the Complaint, Plaintiff's brief stated that Defendants' actions led to the loss of its bond and to litigation with several private and public entities, the fees for all of which they now seek.